UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATHAVONG SINGHAVARA, <br><br> Petitioner, <br><br> v. <br><br> KRISTI NOEM and RUSSELL HOTT, <br><br> Respondents. | Case No. 25-cv-12466 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Nathavong Singhavara's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the following reasons, the Court grants the petition [1]. Within 48 hours of the issuance of this order, Respondents are ordered to release Petitioner from custody under reasonable conditions of supervision.

**I.     Background**

Petitioner, a native of Laos, was detained on October 10, 2025. [1] ¶ 1. Petitioner was admitted to the United States as a refugee on or around March 5, 1983. [1] ¶ 13. On February 4, 2016, an Immigration Judge ("IJ") entered a final order of removal against him (the "Removal Order" or "Order"). [1] ¶ 13. However, the government of Laos had previously disavowed Petitioner's citizenship, rendering Petitioner a stateless individual. [1] ¶ 2.

After the IJ entered a final removal order against Petitioner, he was held in the Department of Homeland Security's ("DHS") custody for over six months. [1] ¶ 26.

1

The Laotian government refused to provide Petitioner with travel documents, and Petitioner was released after it became apparent that there was no country to which he could be removed. [1] ¶ 1. Between his release in 2016 and his detention in October 2025, Petitioner was on supervised release and had never violated the terms of that release. [1] ¶ 26.

The petition contains two claims for relief. First, Petitioner argues that his re-detention violates his Due Process rights under the Fifth Amendment. Second, Petitioner argues that his re-detention violates 8 U.S.C. § 1231(a) of the Immigration and Nationality Act ("INA"), which limits the circumstances under which an alien can be detained after a 90-day period following the entry of a removal order.

At the time his petition was filed, Petitioner was in detention at the Broadview Detention Center ("Broadview") located within the Northern District of Illinois. [1] ¶ 4.

**II. Analysis**

    a. <u>Jurisdiction</u>

Respondents argue that this Court lacks jurisdiction to hear the case under 8 U.S.C § 1252(g) and 1252(b)(9). The Court does not agree.

1. *8 U.S.C. § 1252(g)*

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Respondents rely on *E.F.L*

2

*v. Prim*, where the Seventh Circuit held that Section 1252(g) deprived the district court of jurisdiction to hear a claim challenging a removal order entered against him. 986 F.3d 959, 965 (7th Cir. 2021).

But Petitioner does not seek to nullify the Order, nor does Petitioner argue that Respondents cannot legally effectuate the Order. Rather, Petitioner argues that because Respondents cannot *in fact* effectuate the Order, Petitioner's continued, indefinite detention violate his Constitutional and statutory rights. Such a claim is not swallowed up by Section 1252(g)'s "narrow sweep." *E.F.L*, 986 F.3d at 964; *see also See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality opinion) (holding that Section 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General"; instead, the Supreme Court "read[s] the language to refer to just those three specific actions themselves."). Section 1252(g) thus does not bar the Court's review of Petitioner's claim.

2. *8 U.S.C. § 1252(b)(9)*

Section 1252(b)(9) provides that the Court of Appeals is the exclusive forum for "judicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken . . . to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). Respondents contend that this statute divests a district court from considering a habeas petition challenging "the decision to detain [foreign nationals] in the first place or to seek removal." [10] at 35 (citing *Jennings*, 583 U.S. at 294.

3

Here, Respondents rely on *Tazu v. Att'y Gen. United States*, where the Third Circuit held that Section 1252(b)(9) deprived the district court from considering Tazu's habeas challenge after he was re-detained by DHS. 975 F.3d 292 (3d Cir. 2020). Like Petitioner here, Tazu had previously been detained after an IJ entered an order of removal against him. *Id*. at 294-95. And like Petitioner here, Tazu was released from his original detention on supervised release after the Government determined that it was unlikely he would be removed in the near future. *Id*. But that is where the similarities end. In Tazu's case, the Government determined that it could not remove him because his passport to his native country of Bangladesh had expired. *Id*. at 294. The Government worked with the Bangladeshi consulate to issue Tazu a new passport. *Id*. at 295. A decade after the Government's first attempted removal, the Government received a new passport from Bangladesh and immediately re-detained Tazu to execute his removal order. *Id*. Tazu subsequently filed a writ of habeas corpus seeking release from detention and a stay of removal. *Id*. at 296. The Third Circuit held that Section 1252(b)(9) barred judicial review of Tazu's claim because it "arose from" an action taken to execute his removal. *Id*. at 298. In so holding, the Third Circuit noted that (1) the Government promptly re-detained Tazu after the circumstances previously preventing his removal had changed, (2) his brief re-detention was "a part of sending him back to Bangladesh," and (3) his claim did not "challenge[] the length of his confinement." *Id*. at 299.

None of the same can be said for Petitioner here. The circumstances preventing Petitioner's removal to Laos have not changed—as far as the record in this case

4

shows, Laos still disavows his citizenship, and Respondents have not identified any other third country to which they plan to render Petitioner. And Petitioner's re-detention—now entering its fifth week—cannot be said to be "a part of sending him back" to Laos because Laos will not take him back. And most importantly, Petitioner here *does* challenge the length of his confinement. "Challenges to the length or conditions of an alien's confinement are not directly about removal," *id*. at 299, so review of Petitioner's claim here is not barred by Section 1252(b)(9).

    b. <u>Statutory, Regulatory, and Constitutional Framework</u>

        i. *Six-Month Presumptive Reasonability under* Zadvydas

8 U.S.C. § 1231 provides that when an alien is ordered removed, the Attorney General shall remove the "alien from the United States within a period of 90 days." *Id* at § 1231(a)(1)(A). During this 90-day removal period, the alien "must be held in custody." *Id*. at §1231(a)(2). After that period has elapsed, the Government may continue to detain certain aliens, or the Government may release them under conditions of supervision. *Id*. at § 1231(a)(6). There is no statutory or regulatory time limitation on how long the Government may hold an alien after the 90-day removal period has passed.

However, in *Zadvydas v. Davis*, the Supreme Court limited the amount of time the Government may hold a detainee after the statutory 90-day period passes to a period that is "reasonably necessary to bring about the alien's removal from the United States." 533 US 678, 689 (2001). *Zadvydas* held that it is "presumptively reasonable" for the Government to hold an alien for 6 months, but that if an alien

5

"provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701. "In answering [whether removal is likely in the reasonably foreseeable future], the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id*. at 699.

*Zadvydas* and the relevant regulations do not address whether the six-month presumptive reasonability period is cumulative across periods of detention or whether the period restarts upon each instance of detention. But "[m]ost courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated by a concern that the federal government could otherwise detain aliens indefinitely by continuously releasing and re-detaining them." *Abuelhawa v. Noem*, No. 4:25-CV-04128, 2025 WL 2937692, at *4 (S.D. Tex. Oct. 16, 2025) (collecting cases).

"The remedy for a *Zadvydas* claim is generally release of the habeas petitioner under conditions of supervision. *Trejo v. Warden of ERO El Paso E. Montana*, No. EP-25-CV-401-KC, 2025 WL 2992187, at *10 (W.D. Tex. Oct. 24, 2025); *see also Khan v. Gonzales*, 481 F. Supp. 2d 638, 643 (W.D. Tex. 2006) (granting habeas petitioner's *Zadvydas* claim and ordering he be released subject to an order of supervision);

6

*Gomez Barco v. Witte*, No. 6:20-CV-00497, 2020 WL 7393786, at *1 (W.D. La. Dec. 16, 2020) (same).

### ii. Section 241.4

8 U.S.C. § 241.4 regulates the circumstances under which the Government has authority to continue to detain aliens beyond the removal period—that is, after a final order of removal has been entered against an alien. *Id*. at § 214.4(a). Relevant here, Section 241.4 also provides that the Government "shall have authority, *in the exercise of discretion*, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section." *Id*. at § 241.4(l)(2) (emphasis added). But that discretion is not limitless—the regulation further provides that the Government may revoke release when either "[t]he purposes of release have been served," "[t]he alien violates any conditions of release," "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien," or "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." *Id*. at §§ 241.4(l)(2)(i)-(iv)

### iii. Section 241.13

After the Supreme Court decided *Zadvydas*, the Immigration and Naturalization Service amended Section 241.4 and promulgated Section 241.13, which created new provisions governing the determination of a petitioner's likelihood of removal. *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 FR 56967-01; 8 U.S.C. § 241.13. To wit, Section 241.13 "establishes special review procedures" for aliens who are (1) subject to a final order of removal, (2) detained under the custody

7

review procedures provided in § 241.4 after the expiration of the removal period, and (3) have provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 U.S.C. § 241.13(a). However, Section 241.4's provisions governing the detention of an alien continues to apply *unless* DHS has "ma[de] a determination under [Section 241.13] that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at § 241.13(b)(1).

Among other things, Section 241.13 establishes a "Headquarters Post-order Detention Unit" (HQPDU) to review a detained alien's showing that the alien will not be removed in the reasonably foreseeable future. *Id.* at § 241.13(c). The regulation establishes various procedures by which an alien can make such a showing, *id.* §§ 241.13(d)(1)-(3), and other procedures by which the HQPDU reviews that showing. *Id.* at § 241.13(e)(1)-6). When an alien is re-detained pursuant to this section, courts have held that the Government bears the burden of "showing a significant likelihood that the alien may be removed." *See, e.g., Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *Nguyen v. Hyde*, No. 25-cv-11470, 2025 WL 1725791 (D. Mass. June 20, 2025); *Tadros v. Noem*, No. 25-cv-4108, 2025 WL 1678501 (D. N.J. June 13, 2025).

Claims for relief under either Section 241.4 or Section 241.13 are separate and distinct from claims under *Zadvydas*. *See Sarail A. v. Bondi*, No. 25-CV-2144 (ECT/JFD), 2025 WL 2533673, at *11 (D. Minn. Sept. 3, 2025) (distinguishing between a claim brought under Section 241.13 and a claim *Zadvydas*); *Yee S. v. Bondi,*

8

No. 25-CV-02782 (JMB/DLM), 2025 WL 2879479, at *3 n.5 (D. Minn. Oct. 9, 2025) (noting that a claim under *Zadvydas* is "independent" of a claim for relief under Section 214.13). When a petitioner is detained in violation of Section 241.13, the petitioner is entitled to immediate release. *Yee S*, 2025 WL 2879479, at *5-6.

    c. Application to Petitioner

        i. *Based on the record before the Court, the Court cannot determine whether Petitioner is detained pursuant to Section 241.4 or 241.13.*

As an initial matter, the parties disagree on whether Petitioner's re-detention is governed by Section 241.4 or Section 241.13. Respondents argue that it is the former, which as noted above, gives Government the discretion to—after considering the factors laid out in 8 U.S.C. § 241.4((l)(2)(i)-(iv))—revoke an alien's release and re-detain the alien. [11] at 7-8. Petitioner argues that his re-detention is governed by Section 241.13, in which case Respondents could only lawfully revoke Petitioner's release if they met their burden of showing that "changed circumstances" justified the revocation. [13] at 6-7 (citing *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023)). Petitioner argues that Respondents have not shown any changed circumstances since Petitioner was released in 2016 and that they are thus entitled to relief under the plain language of Section 241.13.

The problem for both parties is that based on the record before it, the Court cannot determine whether Petitioner's re-detention is governed by either regulation. The two sections make clear that unless DHS has made a Section 241.13 determination that removal is not reasonably foreseeable, Section 241.4's provisions governing detention

9

apply. There is no evidence before the Court establishing that DHS ever made a showing as contemplated by Section 241.13, nor that the HQPDU reviewed and approved the showing under the procedures laid out in Section 241.13(d)-(e). The Court thus cannot say which section's provisions apply to this case.[1] For the reasons set forth below, however, this uncertainty does not preclude an award of relief.

### ii. *Petitioner is entitled to relief under* Zadvydas.

*Zadvydas* stands for a simple proposition: it is presumptively reasonable for the Government to detain an alien for up to six months after a removal order is entered. 533 U.S. at 701. After that, once an alien "provides good reason to believe that there is no significant likelihood of removal in the reasonable foreseeable future," the Due Process Clause of the United States Constitution requires that the alien be released unless the Government can rebut the alien's showing. *Id*. Respondents do not contest that the six-month presumptively reasonable period is cumulative, and the Court joins the majority of courts in holding that that it is. Petitioner thus is into his eighth month of detention. Respondents nonetheless make three arguments against Petitioner's *Zadvydas* claim.

First, Respondents argue that Petitioner's re-detention does not violate his Due Process rights. As noted above, Respondents argue that Section 241.4 governs Petitioner's re-detention, and because Section 241.4[2] affords the Government

---

[1] Petitioner cited numerous cases where a petitioner-alien was re-detained and a district court ordered that the petitioner be released under Section 241.13 because the Government failed to meet their burden of showing that circumstances had changed such that removal was reasonably foreseeable. *See* [13] at 8 (collecting cases). But in each of those cases, Respondents did not contest that the petitioner's re-detention *was* governed by Section 241.13. Because the same is not true here, these cases are inapposite.

[2] 8 U.S.C. § 241.4(l)(2), which Respondents contend governs, provides the following:

discretion in deciding to revoke an alien's release, Petitioner does not have a liberty interest in avoiding detention. In support, Respondents correctly note that in order for *a statute or regulation* to create a vested liberty interest, it must confer an entitlement to relief that is not subject to any substantive limitations on official discretion. [11] at 8 (citing *Handberry v. Thompson*, 446 F.3d 335, 353 (2d Cir. 2006); *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). Because Section 241.4 allows the Government some discretion in revoking an alien's release, then, Respondents contend that the revocation at issue here cannot implicate Petitioner's Due Process rights.

Putting aside that it is not clear that Section 241.4 applies to this case at all, this argument fails because it misunderstands the source of Petitioner's rights. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 590. Petitioner's interest in his freedom thus comes from the

---

The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:

(i) The purposes of release have been served;
(ii) The alien violates any condition of release;
(iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
(iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

11

Constitution itself, not any statute or regulation. And unlike rights created by statute or regulation, which Congress can create, modify, define, and terminate, rights created by the Constitution cannot be abridged by an act of Congress. *Northern Pipeline Const. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 83 (1982). The Government cannot regulate away the rights afforded to Petitioner by the Constitution, so whatever discretion Section 241.4 provides the Government says nothing about whether his Constitutional rights were violated.

Next, Respondents rely on *Parra v. Parryman* to argue that Petitioner's Due Process rights are not implicated here. *Parra* is highly distinguishable from the case before the Court now. There, the Seventh Circuit considered whether an illegal alien had a Due Process right to remain in the United States while awaiting a final removal order when the alien had been convicted of aggravated sexual assault and who an Immigration Judge had found was deportable and ineligible for any relief from removal. 172 F.3d 954, 956 (7th Cir. 1999). Here, Petitioner does not claim he has any *right to remain in* the United States; rather, he argues he has a right *to be free from detention*. Further, *Zadvydas* (which was decided after *Parra*) extended Due Process rights to those like Petitioner who are subject to a final removal order; *Zadvydas* does *not* protect those who await a final order. *Demore v. Kim*, 538 U.S. 510, 528 (2003). And as the Seventh Circuit noted, "[a]n *alien in Parra's position* can . . . [end his] removal proceeding and return to his native land, thus ending his detention immediately." 172 F.3d at 948 (emphasis added). But Petitioner is *not* an

12

alien in Parra's position; he *cannot* end his removal proceeding by returning to his native land. In short, *Parra* says nothing about Petitioner's claim before the Court.

Finally, Respondents argue that Petitioner has not sufficiently established that his removal is not reasonably foreseeable. [11] at 9-10. The Court does not agree. Courts have found that removal is not reasonably foreseeable where "no country would accept the detainee, the country of origin refused to issue proper travel documents, the United States and the country of origin did not have a removal agreement in place, or the country to which the deportee was going to be removed was unresponsive for a significant period of time." *Tshiteya v. Crawford*, No. 1:13CV894 JCC/IDD, 2013 WL 6635096, at *4 (E.D. Va. Dec. 16, 2013).[3] The facts here squarely accord with such circumstances: Petitioner alleges that his home country has disavowed his citizenship and he cannot return. As noted, Respondents do not dispute this, have not provided any evidence suggesting they can remove him to Laos, and have not identified any third country to which they plan to render him. Petitioner has met his burden under *Zadvydas,* and Respondents have failed to meet theirs. *See Trejo v. Warden of ERO El Paso E. Montana*, No. EP-25-CV-401-KC, 2025 WL 2992187, at *5 (W.D. Tex. Oct. 24, 2025) (granting *Zadvydas* relief where petitioner was detained for eight months and the Government could not identify a country to which it intended to render him).

---

[3] Because the Court considers Petitioner's claim under the *Zadvydas* framework, rather than a regulatory framework, Petitioner need not satisfy the requirements laid out in Section 141.13(d) and (e) to meet his burden. Rather, Petitioner need only provide a "good reason" establishing that his removal is not reasonably foreseeable. 533 US at 701.

13

To be clear, the Court takes no position on whether the Government might at some point in the future be able to briefly re-detain Petitioner as a part of executing the removal order against him. The Court also takes no position as to whether the Petitioner's re-detention on October 10, 2025 was lawful. The Court holds only that Petitioner's continued detention, which is now into its eighth month, and which has no foreseeable end in sight, violates Petitioner's Due Process rights.[4] Under *Zadvydas*, Petitioner is thus entitled to be released.

### III. Conclusion

For the foregoing reasons, the Court grant's Petitioner's petition for writ of habeas corpus [1]. Within 48 hours of the issuance of this order, Respondents are ordered to release Petitioner from custody under reasonable conditions of supervision. The parties are to file a joint status report seven days after the issuance of this order. Further, the Court's order [3] that the Government cannot remove Petitioner from the jurisdiction of the United States or transfer him to any federal judicial district other than those in the States of Illinois, Indiana, or Wisconsin remains in effect so long as Petitioner is in Respondents' custody.

E N T E R:

Dated: November 10, 2025

Mary M Rowland

---

[4] The Court also does not reach Petitioner's second count for relief under 8 U.S.C. § 1231(a).